UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-20709-CR-UNGARO/SIMONTON

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ROBERTO RODRIGUEZ,

        Defendant.
_____/

### UNOPPOSED ORDER FINDING THAT DEFENDANT RODRIGUEZ IS PRESENTLY COMPETENT TO PROCEED AND THAT THE DEFENDANT HAS KNOWINGLY AND VOLUNTARILY ADMITTED THE ALLEGED VIOLATIONS

This matter is before the undersigned pursuant to an Order of Reference entered by the Honorable Ursula Ungaro, which referred the Petition for Revocation of Supervised Release and Defendant's Motion for Competency Evaluation pursuant to 18 U.S.C. § 4241 to the undersigned United States Magistrate Judge (DE # 39).  As described in more detail below, following a competency hearing, all parties agreed that Defendant Roberto Rodriguez is presently competent to proceed in this matter.  In addition, at the conclusion of the hearing, Defendant Roberto Rodriguez knowingly and voluntarily admitted the six alleged violations.  Therefore, this matter should be set for a final sentencing hearing on the Petition.

    I.    **BACKGROUND**

Roberto Rodriguez was convicted of willfully making a threat to take the life of and to inflict bodily harm upon the President of the United States, in violation of 18 U.S.C. § 871(a).  He was sentenced on January 25, 2006 to serve 37 months in custody, followed by three years of supervised release.  His term of supervised release began on

May 18, 2007.  On October 2, 2008, a Petition was filed to revoke his supervised release based upon the following six alleged violations:

1. **Violation of Standard Condition**, by failing to report to the probation officer as directed.  On August 21, 2008, during a phone conversation, the defendant was instructed to report to the U.S. Probation Officer on August 25, 2008, and he failed to comply.

2. **Violation of Standard Condition**, by failing to report to the probation officer as directed.  On or about September 5, 2008, during a phone conversation, the defendant was instructed to report to the U.S. Probation Officer on September 12, 2008, and he failed to comply.

3. **Violation of Standard Condition**, by failing to follow the instructions of the probation officer.  On or about July 1, 2008, the defendant failed to report to Camillus House, as directed.

4. **Violation of Standard Condition**, by failing to notify the probation office of a change in residence.  On or about June 4, 2008, the defendant moved from his approved residence of 1907 NW 38 Street, Miami, Fl. 33142, and failed to notify the probation officer ten (10) days prior to any change.

5. **Violation of Standard Condition**, by failing to notify the probation office of a change in residence.  On or about September 30, 2008, the defendant moved from his approved residence of 808 West 1st Avenue, Hialeah, Fl. 33010, and failed to notify the probation officer ten (10) days prior to any change.

6. **Violation of Special Condition**, by failing to participate in an approved mental health treatment program.  On or about July 10, 11, 14, 15, 16, and 17, 2008, the defendant failed to attend his scheduled appointment with KIVA and to date, has not satisfactorily participated in treatment as directed by the court and monitored by the U.S. Probation Officer.

The Defendant initially appeared in court in connection with these alleged violations on October 15, 2008.  Thereafter, he filed a Motion for Competency Evaluation (DE # 39).  Following the receipt of mental health evaluations and after conducting a

hearing, this Court found that the Defendant was suffering from a mental disease or defect rendering him mentally incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him and properly assist in his defense, and he was committed to the custody of the Attorney General and housed at the Federal Medical Center in Butner, North Carolina ("FMC"), for treatment (DE # 47).

Following several extensions of the treatment time, and interim reports, on March 11, 2010, the undersigned received the final written psychiatric evaluation completed by the FMC confirming that the Defendant still was not competent to stand trial and was not likely to be restored to competency in the foreseeable future. He was therefore returned to this District for a competency hearing to determine whether he was likely regain competence.

On April 12, 2010, the Court was advised that Defendant's counsel had obtained an evaluation of the Defendant by psychologist Michael J. DiTomasso, Ph.D. Defendant's counsel stated that Dr. DiTomasso had informed Counsel that he believed that the Defendant was competent to proceed in the instant legal proceedings. On April 14, 2010, Counsel for the Defendant forwarded Dr. DiTomasso's written report to the undersigned and the Government, and also filed the Report under seal with the Court (DE # 84).

Thereafter, as described below, a competency hearing was held.

II.     **THE COMPETENCY HEARING**

At the competency hearing, the Court heard testimony from Defendant Roberto Rodriguez, psychologist Michael DiTomasso, Ph.D., and a staff psychiatrist from FMC, Bryon Herbel, M.D. In addition, the Court received in evidence as exhibits the Forensic

Update Reports and Final Report issued by Dr. Herbel during the course of the Defendant's treatment at FMC Butner (GX 2 - 8); curriculum vitae of Dr. Herbel (GX 1) and Dr. DiTomasso (DX 1), the report of the psychological evaluation performed by Dr. DiTomasso (DX 2); and Clinical Notes from FDC Miami following the Defendant's return there from FMC Butner, as well as notes of Dr. Herbel regarding events which occurred after his final report but prior to the Defendant's transfer to FDC Miami (DX 3).

The Defendant testified first, in the presence of both Dr. DiTomasso and Dr. Herbel.  He answered the questions clearly and coherently, both on direct examination and cross-examination.  He demonstrated that he understood the nature of the present proceedings, the roles of the participants, the charges alleged in the Petition, and the potential penalties.  He stated that he was able to communicate with his attorney.  He testified that he sometimes heard voices, but that he could disregard them if he was talking to someone, and concentrate on the conversation.

Dr. DiTomasso testified consistently with his report, after the Defendant testified. Dr. Herbel testified last, and as set forth below, changed his opinion from his written report, and concurred with Dr. DiTomasso that the Defendant was competent to proceed. Based upon the report of Dr. DiTomasso, and the unequivocal testimony of Dr. Herbel, as well as the Court's own observations of the Defendant, there is no question that he is presently competent to proceed to trial.  Therefore, the relevant testimony is only summarized briefly below.

Dr. DiTomasso evaluated the Defendant on April 7, 2010.  The evaluation consisted of a Clinical Interview, Survey of Competency Issues, Beta III Intelligence Test, and Test of Nonverbal Intelligence.  In addition, he reviewed the various forensic reports issued by Dr. Herbel, and the alleged violations of the conditions of supervised release.

-4-

**Dr. DiTomasso observed that the Defendant was neat and clean in his clothing and personal hygiene, his mood was unremarkable, his affect was appropriate, and he was cooperative with the process.  The Defendant was oriented to person, place and time; and, his speech was relevant and rational.  The intelligence tests reflected that the Defendant is in the borderline range; therefore he is intellectually limited, but not mentally retarded.  Dr. DiTomasso rated the Defendant as "Acceptable" with respect to each of the following six areas of competence: (1) appreciation of the charges and/or allegations; (2) appreciation of the range and nature of possible penalties, if applicable, which may be imposed in the proceedings against the accused; (3) understanding of the adversarial nature of the legal process and proceedings; (4) capacity to communicate/disclose pertinent information to the attorney and to assist appropriately in the defense; (5) ability to manifest appropriate courtroom behavior; and, (6) capacity to testify relevantly.  He opined that the Defendant was suffering from chronic psychiatric disease, which appeared to be schizophrenia, paranoid type, but stated that the symptoms appeared to be in remission, and this did not impair his functional abilities.  He summarized his opinion as follows:**

> **[The Defendant] can discuss his situation and his options rationally and based on his own self-interest and realistic appraisal of the objective facts.  He has a rational and factual understanding of why he was convicted in the first place, and of why he is charged with violating his probation, and of the ways in which the proceedings he faces can play out from this point forward.  He has a particularly good grasp of the advantages and disadvantages of a plea versus a trial.  He can discuss his charges and his behaviors relevant to those charges being levied against him.  He can reasonably and rationally discuss the options he may have to choose from as his case proceeds, and he can consult with an attorney to achieve the best outcome for himself in the matters at hand. He can inform his attorney of relevant facts, and he can benefit from his attorney's counsel.**

(DX 2).

Dr. Herbel testified after Dr. DiTomasso. At that time, he receded from his opinion that the Defendant was not competent, and opined, based upon his observations of the Defendant in court, the testimony given by the Defendant, the reports by Dr. DiTomasso and the medical staff at FDC Miami, that the Defendant had regained competence, and was presently competent to proceed in this matter.

Dr. Herbel stated that his change in opinion was based upon his observations of the Defendant's testimony in court, as well as the clinical notes from FDC Miami regarding their mental health evaluation of the Defendant when he returned. Dr. Herbel stated that although he could not definitively explain why the Defendant had recovered, there were two theoretical possibilities. First, there was the possibility that the medication he had administered to treat the Defendant, which had not been successful based upon external observations, had been successful in promoting the brain to heal itself, so that when he discontinued the use of this medication shortly before the Defendant returned to Miami, and placed the Defendant back on another psychotropic medication which had not been successful previously, the other psychotropic medication was able to work effectively. Second, since the nature of the Defendant's illness naturally fluctuates from time to time, he will have periods of time when he is competent, followed by other extended periods of time when he is not competent. Thus, the restoration of the Defendant's competence may be due to a natural decrease in the seriousness of his disease, independent of his treatment.

Thus, at the conclusion of the hearing, both Dr. DiTomasso and Dr. Herbel opined that the Defendant was competent to proceed in this matter, although he suffered from a mental disease or defect of schizophrenia, paranoid type, and suffered from occasional

auditory hallucinations. They both specifically opined that the hallucinations did not appear to be so severe that they affected the Defendant's competence; and, that persons suffering from visual and auditory hallucinations could nevertheless be competent to proceed. They agreed that at the present time, Defendant was able to appreciate the nature of the charges and the proceedings, the possible penalties, he could communicate with counsel, manifest appropriate courtroom behavior and testify relevantly.

### III.   LEGAL ANALYSIS

Once the Court has made an initial finding that a defendant is incompetent to stand trial, and has committed that defendant to a facility for treatment, the determination of the defendant's subsequent competency to stand trial is governed by 18 U.S.C. § 4241(e). That section provides that the , in pertinent part:

> (e) Discharge.– When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court . . . . The court shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine the competency of the defendant. If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings.

In the case at bar, the parties agreed that the Court was required to hold a hearing to determine whether the Defendant had regained competency to proceed. As a result of the hearing, based upon the consensus of Dr. DiTomasso and Dr. Herbel, as well as an

-7-

independent assessment of their testimony and the testimony of the Defendant, and a review of the record as a whole, the undersigned finds by a preponderance of the evidence that Defendant Roberto Rodriguez presently has the capacity to understand the nature and consequences of the charges and proceedings against him and to properly assist his counsel in his defense.

### IV.     THE DEFENDANT KNOWINGLY AND VOLUNTARILY ADMITTED THE ALLEGED VIOLATIONS

At the conclusion of the competency hearing, the undersigned announced the above determination that the Defendant was competent to proceed. At that time, defense counsel advised the Court that the Defendant wished to admit the violations alleged in the Petition, and proceed to a final sentencing hearing before the District Judge. Therefore, the undersigned Magistrate Judge conducted a colloquy with the Defendant, and advised him of the specific violations contained in the petition, as well as his rights regarding an evidentiary hearing at which the government would be required to prove that he committed the violations. The Defendant acknowledged that he understood the nature of the alleged violations and these rights, and had discussed each of these violations with his counsel. The Defendant admitted that he had committed each of the violations.

The undersigned finds that the Defendant has knowingly, intelligently and voluntarily admitted each of the six alleged violations, and waived his right to an evidentiary hearing.

### V.     CONCLUSION

Therefore, based upon the above proceedings, and a review of the record as a whole, it is hereby

**ORDERED AND ADJUDGED** that the Defendant is competent to proceed.

Based upon the oral admission on the record by the Defendant that he committed the alleged violations, this case should be set for a final sentencing hearing before the District Court.

**DONE AND ORDERED** in Miami, Florida, on May 28, 2010.

*Andrea M. Simonton*
**HONORABLE ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies via CM/ECF to:
The Honorable Ursula Ungaro, United States District Judge
All counsel of record